**Opinion issued October 4, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00253-CV

———————————

**CVS PHARMACY, INC., CAREMARK, L.L.C., CVS RX SERVICES, INC., AND CAREMARK PHC, L.L.C., Appellants**

**V.**

**KENT BLAND BALLARD, JUDITH BALLARD CONNORS, AND GARY THOMAS BALLARD, INDIVIDUALLY AND AS CO-EXECUTORS OF THE ESTATE OF MARGARET BALLARD, DECEASED, AND THOMAS HUGH BALLARD, AS SURVIVING SPOUSE OF MARGARET BALLARD, DECEASED, Appellees**

---

**On Appeal from the 189th Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-52145**

---

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellants, CVS Pharmacy, Inc., Caremark, L.L.C., CVS RX Services, Inc., and Caremark PHC, L.L.C. (collectively, "CVS"), challenge the trial court's order denying its motion to dismiss the health care liability claim[2] made against them by appellees, Kent Bland Ballard, Judith Ballard Connors, and Gary Thomas Ballard, individually and as co-executors of the estate of Margaret Ballard, and Thomas Hugh Ballard, as surviving spouse of Margaret Ballard (collectively, the "Ballards"), for the wrongful death[3] of Margaret Ballard. In its sole issue, CVS contends that the trial court erred in concluding that the Ballards' medical expert report is sufficient and not dismissing the Ballards' claim.

We affirm.

## Background

In their original petition, the Ballards assert a health care liability claim against Dr. Bhakti Khatri, Medical Clinic of Houston, L.L.P., and CVS. The Ballards allege that Dr. Khatri negligently prescribed Margaret Ballard "Methotrexate with severely incorrect dosage instructions" and failed "to recognize the medication error" when Margaret returned to Dr. Khatri with "Methotrexate

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9) (Vernon Supp. 2012).

[2]     *See id.* § 74.001(a)(13) (Vernon Supp. 2012).

[3]     *See id.* §§ 71.001, 71.021 (Vernon 2008).

toxicity symptoms." The Ballards further allege that CVS negligently failed "to recognize and correct a dangerous drug overdose" and "to fill the prescription in compliance with Texas Pharmacy Practice Standards."

The Ballards attached to their petition an expert report[4] authored by Dr. Bill Pittman, a practicing pharmacist. In the report, Dr. Pittman stated that Dr. Khatri prescribed Margaret "90 methotrexate 2.5 mg tables to be taken one tablet by mouth every day," but he defined an "appropriate dose" of Methotrexate to be no more than one tablet of 2.5, 5, or 7.5 milligrams "taken *once a week*." Dr. Pittman concluded that the overdose was a "dangerous error" that "resulted in [Margaret's] suffering and eventual death."

Dr. Pittman then quoted the Texas Pharmacy Act, which states that a pharmacist may be disciplined if he has been "negligent in the practice of pharmacy."[5] In addition, he cited the Texas Pharmacy Rules as follows,

281.7 Grounds for Discipline for a Pharmacist License

> (a)(13) Failing to practice pharmacy in an acceptable manner consistent with the public health and welfare.

291.73(b) Pharmacist-in-charge.

> (2) Responsibilities. The Pharmacist-in-charge shall have the responsibility for, at a minimum, the following:

---

[4] *See id.* § 74.351 (Vernon 2011) (requiring expert report to be served in health care liability claims).

[5] *See* TEX. OCC. CODE ANN. § 565.001(a)(13) (Vernon 2012).

3

<blockquote>

(B)     Ensuring that drug and/or devises are prepared for distribution safely, and accurately as prescribed;

</blockquote>

291.32(c) Pharmacists

<blockquote>

(F)     A dispensing pharmacist shall ensure that the drug is dispensed and delivered accurately as prescribed . . . .[6]

</blockquote>

Noting that a "prescribing physician is to be called any time a pharmacist has a question about a prescription," Dr. Pittman concluded that CVS's failure "to recognize and correct the prescription error" constituted a "breach of the pharmacist's duty to comply with the standard of care expected of prudent Texas pharmacists."

Under a section of his report entitled "Standard of Care in Pharmacy Practice," Dr. Pittman further stated,

<blockquote>

In this case, a reasonably prudent pharmacist would have:

1.     Carefully examined the methotrexate prescription;

2.     Input (or overseen a technician's input) of accurate patient data into the computer;

3.     Performed a Drug Utilization Review to ensure, among other requirements, that the correct dosage was being dispensed;

4.     Noticed the overdose, called the physician and corrected the prescription[;] then

</blockquote>

---

[6]    22 Tex. Admin. Code §§ 281.7, 291.32, 291.73 (2012) (Tex. St. Bd. of Pharmacy).

5. Dispensed the correct number and strength of the prescribed drug, properly labeled with the correct directions for use.

Dr. Pittman asserted that CVS had not "completely met" the standards of a reasonably prudent pharmacist and had been "negligent in the practice of pharmacy by failing to recognize and correct a dangerous drug overdose."

CVS objected to Dr. Pittman's expert report and filed a motion to dismiss the Ballards' claim. In its motion, CVS argued that Dr. Pittman's expert report is "wholly conclusory as to his argument that the amount prescribed and properly dispensed constitutes an overdose," "[f]ails to cite the *actual* applicable standard of care for pharmacies," "[f]ails to identify any of the alleged pharmacy defendants by the name(s) under which they have been sued," and is "insufficient to establish causation."[7] After a hearing, the trial court denied the motion to dismiss.

## Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without

---

[7] The Ballards later served an expert report, authored by Dr. Spencer Wilking, which addressed only the element of causation. CVS objected to Dr. Wilking's report and filed a separate motion to dismiss, but the trial court overruled the motion. CVS does not appeal that ruling.

5

reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cnty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

**Sufficiency of Expert Report**

In its sole issue, CVS argues that the trial court erred in denying its motion to dismiss the Ballards' health care liability claim because Dr. Pittman's expert report "failed to identify the applicable standard of care" and "failed to provide a fair summary of how CVS breached the standard of care." CVS also argues that the Ballards' expert report constitutes "no report" because the Ballards failed "to serve one or more expert reports for each of the pharmacy entities they named in their complaint."

A health care liability claimant must provide each defendant health care provider with an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon 2011); *Gray*, 189 S.W.3d at 858. The expert report must provide a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the health

6

care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

If a defendant files a motion to dismiss challenging the adequacy of the claimant's expert report, the trial court shall grant the motion to dismiss only if it appears to the court, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report. *Id.* § 74.351(l). The only information relevant to the inquiry is that contained within the four corners of the document. *Palacios*, 46 S.W.3d at 878. Although the claimant need not marshal all of his proof in the report, the report must include the expert's opinion on each of the elements identified in the statute. *See id.* at 878–79; *Gray*, 189 S.W.3d at 859.

In setting out the expert's opinions, the report must provide enough information to fulfill two purposes to constitute a good faith effort. *Palacios*, 46 S.W.3d at 879. First, the report must inform the defendant of the specific conduct the claimant has called into question. *Id.* Second, the report must provide a basis for the trial court to conclude that the claim has merit. *Id.* A report that merely states the expert's conclusions does not fulfill these two purposes. *Id.* The expert must explain the basis of his statements to link his conclusions to the facts. *Bowie*, 79 S.W.3d at 52. However, a claimant need not present evidence in the report as if

he were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. Furthermore, the report may be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or trial. *Id.* We review the sufficiency the report by looking at the four corners of the report. *See Palacios*, 46 S.W.3d at 878.

### Standard of Care

CVS first asserts that Dr. Pittman's report "failed to articulate the standard of care for each defendant." CVS argues that Dr. Pittman's report presented "no evidence of the applicable standard of care" because the stated standard of care is "plainly erroneous," "vague and cursory," and based on "irrelevant or contrary statutes and rules."

Identifying the standard of care in a health care liability claim is critical: whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Id.* at 880. While a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given. *Id.* When a claimant sues more than one defendant, the expert report must set forth the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury. *See Doades v. Syed*, 94 S.W.3d 664, 671 (Tex. App.—San

8

Antonio 2002, no pet.); *Rittmer v. Garza*, 65 S.W.3d 718, 722 (Tex. App.—Houston [14th Dist.] 2001, no pet.). However, when each defendant owes the same duty to the patient, the claimant is not required to specifically state the same standard of care for each individual defendant. *See Rittger v. Danos*, 332 S.W.3d 550, 556–57 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (stating that claimants "are not required to specifically state the same standard of care for each individual physician practicing on the same patient when each physician owes the same duties to the patient."); *Romero v. Lieberman*, 232 S.W.3d 385, 391–92 (Tex. App.—Dallas 2007, no pet.) (holding that expert report was sufficient when it stated standard of care for "any medical doctor" for treatment of "septic shock" and all of defendants were doctors who "participated in treating this condition"); *In re Boone*, 223 S.W.3d 398, 405–06 (Tex. App.—Amarillo 2006, orig. proceeding) (holding that export report was sufficient when it ascribed same standard of care to physicians and physician's assistant).

Here, Dr. Pittman evaluated "the manner in which the care and supervision rendered by the personnel of CVS/Caremark Pharmacy stood in relation to the standard of care." The report states Dr. Pittman's asserted standard of care for pharmacists, and each named defendant is either a pharmacy or its parent company. When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is

sufficient. *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008); *see also Mariner Health Care of Nashville, Inc. v. Robins*, 321 S.W.3d 193, 206 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Accordingly, we hold that Dr. Pittman's expert report articulated a standard of care for each of the named defendants.

Regarding the sufficiency of the articulated standard of care, CVS argues that Dr. Pittman's citations to the Texas Occupations Code and the rules promulgated by the Texas Pharmacy Board are "irrelevant" because courts "have declined to hold that even specific provisions regulating pharmacist conduct impose a standard of care." *See, e.g., Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 466–67 (Tex. App.—Austin 2000, pet. denied) (holding that administrative rules did not impose legal duty on pharmacists to warn purchasers of potential side effects). CVS further argues that even if the statutes and administrative rules are relevant, they are "contrary" to the Ballards' position because they actually "indicate that CVS acted properly," noting that the administrative rules cited by Dr. Pittman advise pharmacists to dispense drugs "safely and accurately as prescribed." *See* 22 Tex. Admin. Code § 291.32(b)(2)(B) (2012) (Tex. St. Bd. of Pharmacy). It argues that because the Ballards allege that Dr. Khatri prescribed the overdose and pharmaceutical staff "accurately" dispensed the drugs as prescribed, CVS did not breach Dr. Pittman's asserted standard of care.

10

However, Dr. Pittman, under a section of the report specifically titled "Standard of Care in Pharmacy Practice," states,

In this case, a reasonably prudent pharmacist would have:

1. Carefully examined the methotrexate prescription;

2. Input (or overseen a technician's input) of accurate patient data into the computer;

3. Performed a Drug Utilization Review to ensure, among other requirements, that the correct dosage was being dispensed;

4. Noticed the overdose, called the physician and corrected the prescription[;] then

5. Dispensed the correct number and strength of the prescribed drug, properly labeled with the correct directions for use.

Thus, Dr. Pittman, in articulating the standard of care, did not rely solely on the statutes and administrative rules that CVS alleges are "irrelevant" and "contrary." Rather, Dr. Pittman's asserted standard of care—the expert's opinion regarding the "specific information about what the defendant should have done differently"—is stated in the five steps quoted above. *See Palacios*, 46 S.W.3d at 880.

CVS also argues that the standard of care is "plainly erroneous," citing *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455 (Tex. App.—Austin 2000, pet. denied) and *Simonson v. Keppard*, 225 S.W.3d 868 (Tex. App.—Dallas 2007, no pet.). In *Morgan*, the plaintiffs alleged that the staff of a Wal-Mart pharmacy had negligently failed to warn its customers of the side effects of Despramine,

11

proximately causing a patient's death; a jury awarded the plaintiffs $674,500 in damages. 30 S.W.3d at 460. Wal-Mart argued that its pharmacists had no duty, as a matter of law, to "warn of the potential dangers of Despramine because that duty rested with the prescribing physician." *Id.* at 460–61. The Austin Court of Appeals first noted that several courts from other jurisdictions had not recognized such a duty where "the prescription is proper on its face and neither the physician or the manufacturer has required that the pharmacist give the customer any warning." *Id.* at 461. The court held that "pharmacists have no generalized duty to warn patients of potential adverse reactions to prescription drugs absent some special circumstances." *Id.* at 469.

Here, unlike in *Morgan*, CVS appeals only the trial court's order denying their motion to dismiss under Chapter 74. A motion to dismiss under Chapter 74 seeks only to demonstrate that a claimant has not satisfied the procedural requirements of the statute. *Wissa v. Voosen*, 243 S.W.3d 165, 169 (Tex. App.—San Antonio 2007, pet. denied). And, under Chapter 74, a report need only represent a "good faith effort" to comply with the definition of an expert report. Tex. Civ. Prac & Rem. Code Ann. § 74.351(l); *Wissa*, 243 S.W.3d 165 at 169–70.[8] While CVS may disagree with the standard of care asserted by Dr. Pittman,

---

[8] CVS argues that *Wissa* is distinguishable because it "addressed a disagreement about a precise standard of care within a particular profession." They assert that Dr. Pittman's expert report states the standard of care for a physician and not a

we cannot say that his expert report does not represent a good faith effort to provide his opinion regarding "what [CVS] should have done differently." *See Palacios*, 46 S.W.3d at 878; *see also Woofter v. Benitez*, No. 01-09-00161-CV, 2009 WL 3930839, at \*7 (Tex. App.—Houston [1st Dist.] Nov. 19, 2009, no pet.) (mem. op.).

In *Simonson*, the court held that a doctor was not qualified to report on the standard of care applicable to an advanced practice nurse because the doctor gave no indication that he "had any familiarity with the standard of care for a nurse practitioner." 225 S.W.3d at 873–74. As CVS concedes, the court "did not decide the case" on an alleged "articulation of a plainly erroneous standard of care," but rather held that the expert was not qualified to state a standard of care for that particular profession. *Id.* Thus, *Simonson* cannot stand for the proposition that the standard of care articulated by Dr. Pittman is plainly erroneous.

Finally, CVS argues that Dr. Pittman's "purported articulation of the standard of care is so vague as to constitute no evidence" because he "fails to describe what kind of training pharmacists actually receive, provide any meaningful definition of 'safety net' and 'errant,' or describe how a reasonably

pharmacist. However, in his expert report, Dr. Pittman, himself a physician, clearly identifies "the personnel of CVS/Caremark Pharmacy," relies partially on statutes and administrative rules related to pharmacists, and asserts that the CVS pharmacist should have called the physician to correct the prescription. Thus, Dr. Pittman's expert report clearly asserts a standard of care for a pharmacist, even if CVS disagrees about the scope of that standard of care.

prudent pharmacist would have been trained to respond under the facts of this case." However, as stated above, Dr. Pittman articulated five precise steps that a "reasonably prudent pharmacist" should have performed in the present case, including noticing the overdose, contacting the prescribing physician, and then correcting the prescription. And Dr. Pittman opined that the overdose consisted of a dosage prescribed to be taken daily, which should have been "taken *once a week*." Moreover, he stated that the CVS pharmacist should have noticed the overdose "during the final prescription filling step" because the Texas State Board of Pharmacy Rules "require a pharmacist to perform the final label check." We conclude that this constitutes a "good faith effort" to sufficiently inform CVS of Dr. Pittman's opinions concerning "what care was expected, but not given." *See Palacios*, 46 S.W.3d at 880.

### Breach

CVS further argues that Dr. Pittman's "unsupported conclusion that CVS breached the standard of care is so cursory and divorced from the known facts in this case that it constitutes no evidence at all." Specifically, it asserts that Dr. Pittman's statement that 2.5 milligrams of Methotrexate to be taken daily constitutes a "large overdose" is conclusory, he failed to inform CVS of the conduct the Ballards have called into question, and he does not mention the policies that CVS actually had in place for filling prescriptions.

14

In his expert report, Dr. Pittman defined a "typical" dosage of Metrotrexate for treating Rheumatoid Arthritis as either:

1.)    Single oral doses of 7.5 mg weekly.

2.)    Divided oral doses of 2.5 mg at 12 hour intervals for 3 doses given as a course once weekly.

Dr. Pittman later asserted that,

> In the above referenced case the physician prescribed 90 methotrexate 2.5 mg tablets to be taken one tablet by mouth every day. An appropriate dose would have been one 2.5 mg tablet (or perhaps 5 mg or 7.5 mg as referenced above) to be taken *once a week* . . . .

> It has been my observation that pharmacists typically discover a physician's mistake during the prescription filling process, then call the physician and correct the error . . . . At any rate, the error should have been caught during the final prescription filling step by a pharmacist.

We conclude that Dr. Pittman provided a good faith summary of his opinion concerning "the conduct the plaintiff has called into question," namely, CVS's failure to recognize an overdose and failing to contact the prescribing prescription. Although CVS argues that Dr. Pittman needed to provide more information regarding his opinion on the "typical" dosage schedule for Methotrexate, Margaret Ballard's medical history,[9] and the precise procedures in place at CVS, a Chapter

---

[9]    CVS notes that Dr. Wilking's report does address Margaret's medical history. However, his report necessarily had to address Margaret's medical history because it addressed the issue of causation, and he concluded that there was a "direct causal link between Mrs. Ballard's death and the Methotrexate use." And, in addition to an analysis of Margaret's medical history, Dr. Wilking noted that a

74 proceeding only addresses the requirements of the statute. *Wissa*, 243 S.W.3d at 169. Again, to avoid dismissal in a Chapter 74 proceeding, a claimant need not present evidence in the report as if it were actually litigating the merits. *Palacios*, 46 S.W.3d at 879.

**"No Report"**

Finally, CVS argues that Dr. Pittman's report constitutes "no report" for the purposes of Chapter 74 because it does not "name, let alone distinguish between, CVS Pharmacy, Inc., Caremark L.L.C., CVS RX Services, Inc., and Caremark PHC, L.L.C." and "fails to describe the conduct of any of these entities in a manner that might shed some light into which entity's conduct" it implicates. However, as noted above, when a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient. *Gardner*, 274 S.W.3d at 671–72. A report does not fail to implicate a defendant's conduct solely because the defendant is not identified in the report by name. *Troeger v. Myklebust*, 274 S.W.3d 104, 110 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Ogletree v. Matthews*, 262 S.W.3d 316, 321–22 (Tex. 2007)).

---

"high dose [of] Methotrexate is not an appropriate therapy for treatment of . . . any chronic pain syndrome," and he described the dosage prescribed to her as at a "toxic level."

16

In support of its argument that Dr. Pittman's report constitutes "no report" as to the named defendants, CVS relies on *Rivenes v. Holden*, 257 S.W.3d 332, 340–41 (Tex. App.—Houston [14th Dist.] 2008, pet. denied.). In *Rivenes*, the court held that an expert report constituted no report as to a specific doctor where it did not name the doctor and only implicated the negligence of other co-defendants and "Hospital staff." *Id.* at 338. Likewise, the other cases relied on by CVS hold expert reports insufficient because they did not name the defendants or implicate their conduct. *See Bogar v. Esparza*, 257 S.W.3d 354, 364 (Tex. App.—Austin 2008, no pet.) (holding that report failed to identify defendant doctor or ascribe standard of care as to him); *Apodaca v. Russo*, 228 S.W.3d 252, 255–58 (Tex. App.—Austin 2007, no pet.) (holding that expert report did not implicate defendant because it referred only to other health care providers); *Garcia v. Marichalar*, 198 S.W.4d 250, 252 (Tex. App.—San Antonio 2006, no pet.) ("[T]hat report, *which focused on the acts committed by other defendants*, did not mention [the defendant] at all.") (emphasis added).

Here, however, Dr. Pittman's expert report implicates CVS as being vicariously liable for the negligence of their employees. CVS asserts that the Ballards pleaded only direct liability claims. However, in their original petition, the Ballards assert that:

> Defendants, CVS PHARMACY, were negligent in one or more of the following particulars.

17

a. By failing to recognize and correct a dangerous drug overdose.

b. In failing to fill the prescription in compliance with Texas Pharmacy Practice Standards.

Although the Ballards did not use the words "vicarious liability," the test for determining if a petition provides fair notice of a claim is whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy. *Southwest Gen. Hosp., L.P. v. Gomez*, 357 S.W.3d 109, 112 (Tex. App.—San Antonio 2011, no pet.) (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). Petitions are construed liberally and in favor of the drafter if no special exceptions have been sustained to that petition. *Id.* Here, the language used by the Ballards in their petition implicates CVS as being vicariously liable for the failure of its employees to "recognize and correct a dangerous drug overdose" and "fill the prescription in compliance with Texas Pharmacy Practice Standards." And it is undisputed that each of the named defendants are connected to CVS Pharmacy or the parent corporate entity of CVS Pharmacy. Accordingly, we hold that the trial court did not err in concluding that the Ballards' medical expert report is sufficient and not dismissing their health liability claim.

## Conclusion

We affirm the order of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.